THE STATE ex rel. EDMOND KOELN, Collector, Appellant, v. HARRY LESSER et al., Executors.

In Banc, November 14, 1911.

1. **TAXATION: Shares of Stock in Foreign Corporation: Not Taxable.** Shares of stock in a foreign corporation that owns no property in this State, held within this State by a resident of this State, cannot, under the laws of this State, be assessed for taxation against the shareholder. Such shares are not subject to taxation in this State under the laws thereof.

2. ———: **Assessment: Taxation Must Be Authorized by Statute.** There can be no lawful collection of a tax until there is a lawful assessment, and there can be no lawful assessment except in the manner prescribed by law and against property designated by law as taxable. No personal property is taxable unless the statutes declare it to be taxable.

3. ———: ———: ———: **Enumeration of Property in Statute: General Term of Property: Sec. 11348.** The words "all other property not above enumerated . . . and every other species of property not exempt by law from taxation," found in the tenth division of the ten classes or enumerations of personal property in Sec. 11348, R. S. 1909, cannot be held to include everything that a person may own or have an interest in, either direct or indirect, here or elsewhere. If that were their meaning there would have been no use for any of the many enumerations in that class or the other nine. The certificates of stock in a foreign corporation, held and owned by a resident of this State, are not expressly enumerated in that section of the statute, nor are they impliedly included under the general word "property," used as it is in connection with the many enumerations. The taxpayer is required to list any properties he may own mentioned and enumerated in the full list of items classified and set forth in that section, and is not required to go to other sections to ascertain what property he must list.

4. ———: ———: **Property: Applies to Property in State: Sec. 11519.** The reasonable construction of the clause in Sec. 11519, R. S. 1909, defining the general terms "property" and "personal property," "wherever used in this chapter," to mean every tangible and intangible thing being the subject of ownership, whether animate or inanimate, real or personal, is that it was intended to mean all property in this State. That view is further strengthened by the fact that, in the very comprehensive enumer-

ation of stocks, bonds and many other species of personal property, it no where says of any items mentioned that they are included whether in this State or elsewhere until the enumeration reaches "ships, vessels or other boats," and of them it says, whether "within the jurisdiction of this State or elsewhere."

5. ———: ———: ———: ———: Secs. 11334 and 11415; Levy and Assessment. The language of Sec. 11334, R. S. 1909, providing that "for the support of the government of the State, the payment of the public debt and the advancement of the public interest, taxes shall be levied on all property, real and personal, except" property exempt by the Constitution, affords no more authority for saying that taxes are to be levied against personal property outside of the State than that they are to be levied against real estate lying in other States; if it includes the one, it includes the other. The section does not levy taxes; the levying is imposed by Sec. 11415, which says that "there shall be annually levied, assessed and collected on the assessed value of all real estate and personal property subject by law to taxation in this State" certain taxes; and that means that there must be an assessment before there can be a levy; and the property to be taxed is not all the real or personal property a man may own, but all that is "subject by law to taxation in this State," which means property that is not exempt and that is designated by statute to be assessed. Only that property is taxable which is required by law to be assessed for taxation.

6. ———: ———: Sec. 11415: Property "Subject by Law to Taxation." In none of the statutes, present or past, is there anything to indicate that the words "subject by law to taxation in this State," as used now in Sec. 11415, were meant to include the stock of a foreign corporation which has no property in this State.

7. ———: ———: Taxing Corporations. The present law does not in express terms impose a tax on the certificates of the capital stock of any corporation except banks, insurance companies, building and loan associations, and concerns owning steamboats; and there is a peculiar reason in every case why the stock instead of the property of those excepted companies should be taxed. As to all other corporations provision is made for taxing their properties, and that means properties within the State; and the special provision for taxing shares of stock in banks, insurance and steamboat companies and building and loan associations, in the light of the evident reasons therefor, and the omission to mention for taxation shares of stock in other corporations, and the inclusion of a provision for taxing their properties, show that the taxing of the shares of stock in a foreign corporation was never in the mind of the General Assembly.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

AFFIRMED.

*Edward W. Forristel* and *Frank H. Haskins* for appellants.

(1) The city of St. Louis had authority to assess, levy and collect taxes on the property in question. Art. V, sec. 1, City Charter. (2) The State of Missouri had authority to assess, levy and collect taxes on the property in question. Art. 10, Constitution. (3) The State, by statute, provided for the assessment, levying and collecting of taxes on the property in question. R. S. 1909, secs. 11334, 11348, 11357, 11387, 11519. (4) An abandonment of the sovereign right to exercise the vital power of taxation can never be presumed. The intention to abandon must appear in the most clear and unequivocal terms. State ex rel. v. Johnston, 214 Mo. 662; Ry. v. Cass Co., 53 Mo. 27. (5) The situs for taxation of the shares of stock in a corporation is the residence of the owner. Ogden v. St. Joseph, 90 Mo. 529; In re Greenleaf, 184 Ill. 226; Danville B. & T. Co. v. Parks, 88 Ill. 170; Appeal Tax Ct. of Baltimore v. Gill, 50 Md. 377; Barrington v. Commissioners, 16 Pick. 572; Bacon v. Board, 85 N. W. (Mich.) 307; Dwight v. Mayor, 12 Allen, 316; Dyer v. Osborne, 11 R. I. 321; McKeen v. County of Northampton, 49 Pa. St. 519; San Francisco v. Fry, 63 Cal. 470; Holton v. Bangor, 23 Me. 264; Worth v. Commissioners, 82 N. C. 420. (6) It is not double taxation where the taxes are assessed in different jurisdictions. Judy v. Beckwith, 15 L. R. A. (N. S.), 142; In re Greenleaf, 184 Ill. 226. (7) The tangible property of a corporation and its shares of stock are separate and distinct kinds of property under different ownership and the taxation of both is neither double

nor unconstitutional.  Ogden v. St. Joseph, 90 Mo. 527; Danville B. & T. Co. v. Parks, 88 Ill. 170; Appeal Tax Ct. of Baltimore v. Gill, 50 Md. 377; Barrington v. Commissioners, 16 Pick. 572; Dwight v. Mayor,12 Allen, 316; Dyer v. Osborne, 11 R. I. 321; McKeen v. County of Northampton, 49 Pa. St. 519; San Francisco v. Fry, 53 Cal. 470; Holton v. Bangor, 23 Me. 264; Worth v. Commissioners, 82 N. C. 420; Shelby County v. Union & Planters Bank, 161 U. S. 149; In re Greenleaf, 184 Ill. 226.  (8)  The taxation of the tangible property and the shares of stock of a corporation is not invalid even though both be taxed by the same State.  Sturges v. Carter, 114 U. S. 521; Lee v. Sturges, 2 L. R. A. (Ohio) 556.

*Lewis & Rice* and *McDonald & Taylor* for respondents; *Henry T. Ferriss* and *Joseph H. Zumbalen* of counsel.

(1)  Property within the city of Saint Louis which is subject to taxation for state purposes, is the only property subject to taxation for municipal purposes.  Art. V, sec. 1, City Charter.  (2)  A valid assessment is an essential prerequisite to the lawful exercise of the power of taxation.  The only method of assessment under the laws of Missouri of the property of individuals is fully set forth in chap. 117, art. 2, R. S. 1909.  If this chapter and article do not provide for the assessment of shares of stock of foreign corporations, then they are not taxable under the laws of this State.  Cooley on Taxation (3 Ed.), 644; Abbott v. Lindenbower, 42 Mo. 162; Valle v. Ziegler, 84 Mo. 214; State ex rel. v. Railroad, 114 Mo. 1; Kansas City v. Building & Loan Assn., 145 Mo. 50; St. Louis v. Wenneker, 145 Mo. 238; State ex rel. v. Cunningham, 153 Mo. 642.  (3)  Sec. 11348, R. S. 1909, contains the enumeration and a list of the property, the value of which is to be assessed annually for the purpose of taxation.  The tenth subdivision of

this section, upon which appellant relies, cannot be construed to include shares of stock of foreign corporations. (4) The history of the revenue laws of Missouri discloses a clear intention of the Legislature to omit from the subjects of taxation in Missouri the shares of stock of foreign and domestic corporations (except in specific cases such as banks, etc.). State ex rel. v. Railroad Co., 77 Mo. 203; Laws, 1857, p. 75; Laws, 1866, p. 124; Laws, 1871, p. 80; Laws, 1877, p. 376; secs. 11348, 11357, 11358, R. S. 1909. (5) There is no distinction between the taxation of shares of stock, or of the property, of foreign and domestic corporations in the laws of Missouri. The shares of stock of domestic corporations are not subject to taxation, and it necessarily follows that the shares of stock of foreign corporations are not subject to taxation under the law as it stands to-day and has stood since 1872. Valle v. Ziegler, 84 Mo. 214; State ex rel. v. Railroad, 77 Mo. 202; Sec., 11357, R. S. 1909. (6) The shares of stock of certain corporations are still taxed, the law relative thereto remaining practically the same as it was prior to 1872. These provisions of the law clearly limit this character of taxation to the property described in the several statutes and by implication eliminates those shares of stock not so described. *Expressio unius exclusio est alterius.* If it had been the intention of the Legislature to continue after 1872 the taxation of shares of stock of other corporations, proper provisions would have been made for their assessment. State ex rel. v. Railroad, 77 Mo. 202; Secs. 11,348, 11,357, 11,358, R. S. 1909. (7) Double taxation is not favored in Missouri or elsewhere. A tax upon property of corporations and upon shares of stock, whether the corporation be foreign or domestic, is double taxation, and the intent to impose such taxes will not be imputed to the Legislature unless clearly declared in the statute. There is no such declaration in the laws of Missouri. Railroad

v. Shacklett, 30 Mo. 550; Scotland County v. Railroad, 65 Mo. 123; State ex rel. v. Howard County, 69 Mo. 454; State ex rel. v. Railroad, 77 Mo. 202; Valle v. Ziegler, 84 Mo. 214; Stroh v. Detroit, 131 Mich. 109. (8) The maxim, *mobilia sequuntur personam*, does not apply in Missouri unless so declared by statute, and therefore, the words "all other property" and "every other species of property" only refer to property actually within the jurisdiction of Missouri, or constructively brought within the jurisdiction by a specific legislation enactment. Any other construction would include every species of tangible property beyond the boundaries of the State which belongs to the residents of the State. St. Louis v. Wiggins Ferry Co., 40 Mo. 589; State ex rel. v. St. Louis Co. Ct., 47 Mo. 594; School District v. Bowman, 178 Mo. 654; Plattsburg v. Clay, 67 Mo. App. 497; State ex rel. v. Howard County, 69 Mo. 454; Valle v. Ziegler, 84 Mo. 218; Corn v. Cameron, 19 Mo. App. 573; People ex rel. v. Cunningham, 4 Hun, 595; Hoyt v. Commissioners, 23 N. Y. 224; Secs. 11348, 11337, R. S. 1909. (9) The situs of the shares of stock of a corporation is the residence of the corporation, not that of the owner. A tax upon the shares of stock of a foreign corporation is a tax upon property outside of the State, and, therefore, to be subjected to taxation, requires a specific legislative enactment. In all the States where shares of stock are taxed, they are mentioned in the statutes. The laws of Missouri contain no such provisions. Richardson v. Busch, 198 Mo. 174; Armour Bros. v. Bank, 113 Mo. 13; Jellenik v. Huron Copper Co., 177 U. S. 1; Railroad v. Shacklett, 30 Mo. 550; Caffery v. Coal & Mining Co., 95 Mo. App. 187; School District v. Bowman, 178 Mo. 654; Hoyt v. Commissioners, 423 N. Y. 224; People v. Commissioners, 4 Hun, 595; Cook on Corporations, sec. 485; Thompson on Corporations, sec. 2348. (10) All tax laws are *in invitum* and must be strictly construed.

The statutes of Missouri cannot be construed to include shares of stock without violating this· cardinal rule of interpretation applicable to all tax laws. State ex rel. v. Carleton, 224 Mo. 493; Corn v. City of Cameron, 19 Mo. App. 573; sec. 11348, R. S. 1909; Valle v. Ziegler, 84 Mo. 214. (11) The taxation of the shares of stock of a foreign corporation would be in violation of the Constitution of Missouri, which guarantees uniformity of taxation. Constitution, art. 10, secs. 3 and 4. (12) The taxation in Missouri of shares of stock in a foreign corporation would be in violation of the XIV Amendment of the Constitution of the United States, in that it would be the taking of property without due process of law. Union Transit Co. v. Kentucky, 199 U. S. 194; Sellinger v. Kentucky, 213 U. S. 200; Louisville Ferry Co. v. Kentucky, 188 U. S. 396; Telegraph Co. v. Kansas, 216 U. S. 1; Pullman Co. v. Kansas, 216 U. S. 56; Ludwig v. Telegraph Co., 216 U. S. 149.

VALLIANT, C. J.—Appellant, as revenue collector of the city of St. Louis, sued respondents to recover the amount of certain bills for taxes assessed against them as executors of the will of Julius Lesser, deceased.

The ·petition alleges that defendants were the owners and had charge and management of "taxable personal property in the city of St. Louis of the aggregate value of $89,300, on which taxes had been regularly assessed and the tax bills placed in the hands of the plaintiff as collector, who had used all lawful means to collect, but was unable to do so," etc. The amount of the tax bills was $1982.46, for which judgment with interest and costs was asked.

The defendants answered showing that the alleged "taxable personal property in the city of St. Louis" consisted of shares of stock in foreign corporations, all of which have their assets in other States and pay

taxes thereon in such States. The ownership of the shares of stock by defendants in St. Louis is admitted and the regularity of the steps taken in making the assessment and the issuance of the tax bills is not challenged. The position of the defendants is that the revenue statutes of this State do not subject to taxation shares of stock held by a resident in this State in foreign corporations whose property is all beyond our borders, and that a levy of such taxation would be unconstitutional. There is no dispute as to the facts; the interests sought to be taxed are as stated in the answer. The judgment of the circuit court was in favor of the defendants and the collector appealed.

We do not understand appellant as claiming that there is any statute which in express terms subjects shares of stock in all corporations in general, or in foreign corporations in particular, to taxation. But his contention is that shares of stock are personal property and are comprehended in the term "property" as used in the last line of section 11384, Revised Statutes 1909, and he also relies on the definitions of the terms "property" and "personal property" given in section 11519, Revised Statutes 1909. Tracing the history of our revenue laws through the cases that have come to this court one will see that there have been many disputes between the assessor and collector of taxes on the one hand and corporations and the holder of shares of stock on the other, concerning the meaning of our revenue statutes in relation to the taxing of shares of stock and the property of corporations; yet, although the statutes relied on by appellant are substantially now as they have been for thirty years or more, this case affords the first instance in which it has been claimed that those statutes are to be so interpreted as to mean that shares of stock held by a resident in this State in foreign corporations that own no property here are to be assessed for taxation against the shareholder. If such were the plain

meaning of the statutes the fact that they had not been enforced in the past would not justify their non-enforcement now, but if we have to resort to artificial reasoning to find such a meaning in the statutes the fact that they have never been so interpreted before is worthy to be considered. The sovereign power of the State to require its citizens to pay taxes on all their personal property, or on what they own representing their interests in personal property, within or without the State, may, for the purposes of this case, be conceded. But conceding that the State has the power to tax such interests, it does not follow that such interests are taxed unless the law so declares. It is not left to the tax assessor or tax collector to say what property or what interests in property are to be taxed. Under our system of taxation there can be no lawful collection of a tax until there is a lawful assessment and there can be no lawful assessment except in the manner prescribed by law and of property designated by law for that purpose. [Abbott v. Lindenbower, 42 Mo. 162; Valle v. Ziegler, 84 Mo. 214; State ex rel. v. Railroad, 114 Mo. 1; Kansas City v. Building Association, 145 Mo. 50; St. Louis v. Wenneker, 145 Mo. 230; State ex rel. v. Cunningham, 153 Mo. 642; State ex rel. v. Alt., 224 Mo. 493.]

Section 11348 requires the assessor to furnish the person to be assessed a printed or written blank, prepared for that purpose, containing a list of all the kinds of personal property that he is to return for taxation. The statute has carefully enumerated all things on which the tax is to be levied, and the list is designed to be so explicit that every taxpayer may understand what is required of him. The taxpayer is required to fill out the blanks showing how much if any of each item specified he owns, and the list so made out is to be signed and sworn to by him, and if it is false he is liable to the pains and penalties of perjury. No one can read that section of the statute without

being impressed with the thought that it was the pur-
pose of the lawmaker to make the duty of the tax-
payer in rendering his list for taxation so plain that one
could neither honestly escape making a list of all his
property called for, or be unconsciously led into making
a false return and a false oath.   The statute classifies
the property to be listed under ten heads, of which it
is not claimed that shares of stock in foreign corpora-
tions are included in the first nine, or that they are
expressly included in the tenth, but the claim is that
they are included under the general term "property"
in the last line.   That tenth clause is as follows:
"Tenth, all other property not above enumerated
(except merchandise) and its value; under this head
shall be included all pleasure carriages of all kinds;
all shares of stock or interest held in steamboats, keel
boats, wharf boats and all other vessels; all toll bridges,
all printing presses, type and machinery therewith
connected, and all portable mills of every description,
and all post coaches, carriages, wagons and other
vehicles used by any person in the transportation of
mail (except railway carriages), all carriages, hacks,
wagons, buggies and other vehicles of every kind and
description kept or used by livery men; all carts,
hacks, omnibuses and other vehicles used in the trans-
portation of persons (except railway carriages), and all
paintings and statuary, and every other species of
property not exempt by law from taxation."

That clause begins with the general term "all
other property not above enumerated" and ends with
the even more general term "every other species of
property not exempt by law from taxation."   If by
those two general terms the lawmaker intended to
say that everything that a person might own or have
any interest in, either direct or indirect, here or else-
where, was to be listed for taxation, what was the
use of specifying items either in that clause or in the
preceding nine clauses?   If shares of stock in a foreign

corporation are "property" within the meaning of that word as there used, so are shares of stock in steamboat companies, and so are printing presses and mills and wagons and paintings and statuary, yet all those things, and more, are especially mentioned in that tenth clause, while the preceding nine other clauses are also industriously specific of items to be listed.

Section 11519, on which appellant relies to sustain his contention that shares of stock in a foreign corporation are comprehended under the general terms "property" and "personal property," defines the term "property" "wherever used in this chapter," to mean and include every tangible or intangible thing being the subject of ownership, whether animate or inanimate, real or personal. If the General Assembly had intended by that definition to say that the taxpayer should list for' taxation, not only his property in this State, including the items specified in section 11348, but also everything else on the face of the earth in which he had any interest, either within or without the State, it would require him to list not only the personal property, but also the real estate outside the State, which he might own or have an interest in. The reasonable construction of that clause of the statute is that it was intended to mean property in this State. That intention also appears in the definition in that section given the term "personal property." The definition is very comprehensive, and specifies stocks and bonds and many other things tangible and intangible, but it nowhere says of any of the items mentioned that they are included whether in this State or elsewhere, until it comes to "ships, vessels or other boats," and of them it says, whether "within the jurisdiction of this State or elsewhere." If it was intended to mean that all the personal property enumerated or interest therein, here or elsewhere, was included, why did it specify boats here or elsewhere? The distinction in this particular drawn between

steamboats and other properties shows that the Legislature intended, except as to steamboats, etc., to include only property or interests within this State.

Appellant refers also to section 11334, Revised Statutes 1909: "For the support of the government of the State, the payment of the public debt, and the advancement of the public interest, taxes shall be levied on all property, real and personal, except as stated in the next section." The next section relates only to property exempt from taxation by the Constitution. Here again we have the general term "all property real and personal," and there is in that section no more authority for saying that it includes personal property outside of the State than that it includes real estate beyond our borders; if it includes one it includes both. It will be noticed that there is no tax levied by that section, it is only a declaration that taxes shall be levied, the imposing of the taxes comes later, in section 11415, to wit: "There shall be annually levied, assessed and collected on the assessed value of all the real estate and personal property subject by law to taxation in this State fifteen cents on each hundred dollars valuation for state revenue," etc. By the terms of that section there must be an assessment before there can be a levy. Provisions for the assessment are made in subsequent sections. By the terms of that section the property to be taxed is not all the real and personal property a man may own, but all that is "subject by law to taxation in this State," that is, property which is not exempt from taxation and which is designated by statute to be assessed for taxation. No property is taxable but that which is required by law to be assessed for taxation.

If the terms "property" and "personal property," standing alone, are to be understood as including property or interests in property, outside of this State, under the definitions of those terms given in section

11519, they cannot be so construed in the connection in which they are used in section 11415, just quoted, because those terms are there used with the limitation "subject by law to taxation in this State." Section 11519 undertakes to define the terms "property" and "personal property," but it does not undertake to define the term "property subject by law to taxation in this State"; we must look the whole revenue chapter over to see what that means. A glance back at some of our earlier revenue statutes will assist in the interpretation of the later ones. In the Revised Statutes of 1845, p. 927, we find a section in which all kinds of property intended thereby to be rendered subject to taxation are specified, and among these is: "Ninth, shares of stock in banks, and all other incorporated companies, except hospitals, literary institutions and library associations. . . . Twelfth, the property of all corporations, over and above their capital stock. . . . Thirteenth, shares of stock or interest in any steamboat." There we see a purpose expressed to tax shares of stock in all corporations, but whether it means to include corporations outside of this State is left to inference. We see also a purpose to tax, besides the shares of stock, only the property that the corporation owned over and above its capital stock; the idea being that its capital stock represented its other property, and by taxing the stock that property was taxed. In Revised Statutes 1855, p. 1322, the items of property to be returned for taxation are specified, and shares of stock are there specified with an exception. The clause is: "shares of stock in banks and other incorporated companies, excepting manufacturing companies, the property of which alone shall be taxed." Whether that clause was intended to include foreign corporations is again left to inference; but the excepting of manufacturing companies, which but for the express exception would be included, shows that the lawmaker was contemplating only domestic corpora-

tions. Shares of stock in manufacturing corporations were excepted because the property of the corporation was to be taxed, but property of a foreign manufacturing company could not be taxed in this State, unless the foreign company happened to own property here. The statute of 1855 also specified for taxation "all property owned by incorporated companies, over and above their capital stock"; again showing the purpose of taxing indirectly so much of the property of the corporation as was represented by its stock, by taxing the stock, and taxing directly all the other property of the corporation. It shows also a purpose to gather but one tax on all the property of the corporation, and to avoid double taxation. The language of the statute is not, "excepting such manufacturing corporations whose property is in this State and is here taxed"; if it were so it would show a purpose to tax shares of stock in a corporation whose property was beyond the reach of our assessor and collector; but the language used naturally applies only to manufacturing corporations whose properties are subject to taxation in this State.

In 1857 there was a general revenue law passed (Laws 1857, p. 75) the first section of which contained specifications of the items of property to be taxed, among which was "shares of stock in incorporated companies at their cash value, excepting manufacturing companies, the property of which alone shall be taxed." So the law stood until 1866 (Laws 1865–6, p. 125), when a new general revenue statute was enacted, which omitted all specification of items, declaring in section 1 that taxes should be levied on all property, real and personal, except as stated in the next section. And by section 7 the tax was imposed "on lands and other property, real and personal, made taxable by law, forty cents on the hundred dollars of the assessed value thereof." The significance of that change in the law, in the particular we are now considering, is that it

made no mention of shares of stock in corporations. Whether that omission is to be construed as indicating an intent on the part of the lawmaker not to subject shares of stock to taxation, or as indicating an understanding on the part of the lawmaker that such shares would be comprehended under the general term "personal property," is left to inference. The statute defining the term "personal property," on which appellant relies, had not then been passed. The omission cannot be construed into an express exemption of the shares from taxation, because all other previously specified items of property are also omitted, and we have no more reason to say that the mere omission to specify one item is an exemption than we have to say that of other items. But if shares of stock are not taxable except when expressly made so by law, then the omission in the Act of 1866 leaves them out of the range of taxation. And if shares of stock are never taxed except as representing the property, and when so taxed the property they represent is not taxed, then when the property they do represent is taxed, the purpose to also tax the shares of stock is not to be inferred when not expressed. If shares of stock are taxable because they represent property, then, in order to include them in the term "property" as used in section 7 of the Act of 1866, we must take that word with its context as expressed in that section, which is "property, real and personal, made taxable by law." In that sense it means shares of stock representing property that is taxable by law in this State. The only thing that can be said with certainty of the Act of 1866, in this particular, is that it did not expressly require shares of stock to be listed for taxation. If shares of stock are to be considered personal property within the meaning of that term as used in that act, independent of their representative character, then the act must be construed to mean that the shares should be taxed and the property of the corporation should be

taxed also, which would be double taxation. Our law has never favored double taxation, and therefore a purpose to levy double taxation when not expressed should not be inferred. [Valle v. Ziegler, 58 Mo. 214.]

In 1872 a new revenue law was passed (Laws 1872, p. 80). Section 7 of that act, without specifications, provided that: "There shall be annually levied, assessed and collected on the assessed value of all the real estate and personal property subject by law to taxation in this State, one-fifth of one per centum for state revenue, and one-fourth of one per centum for the payment of all state indebtedness." In that act, for the first time, the terms "property" and "personal property" were defined; the definitions being substantially as now given in section 11519, Revised Statutes 1909. In the definition of the term "personal property" there given, shares of stock in corporations are included. In section 57 it is specified that, "No person shall be required to include in his statement any portion of the capital stock or property of any company or corporation, where such company or corporation is required by this act to list or return both its capital stock and property for taxation in this State, except in such cases as may be specifically otherwise provided for in this act." Therefore it would seem that the framers of that statute understood that shares of stock, except as there excepted, were to be returned in the list for taxation under the term personal property. The reference in that section to corporations that are required by that act to list or return both their capital stock and property for taxation, is to banks and insurance companies as provided in section 35 of the act, in which case the corporation was required to pay the tax and reimburse itself by collecting the amount from its shareholders, as provided in section 36.

In 1877 the revenue law was again altered and amended (Laws 1877, p. 376). The Legislature then returned to the former method, which had existed until

1866, of specifications of the items of property to be listed and returned by the taxpayer. That act, in the particular we are now considering, is substantially the same as our present statute.

In the retrospect of our revenue statute which we have just taken we find that at one time, and for a long while, the law required of the taxpayer that he include in his list for taxation shares of stock in corporations owned by him, but there is no express inclusion of foreign corporations in that requirement nor are they included therein by necessary implication.

The law as it now is does not by express terms impose a tax on shares of stock in any corporation except in banks, or concerns that do a banking business, insurance companies, concerns owning steamboats or other water craft, and building associations; the property of all other corporations is taxed like property of persons. Banks and insurance companies pay taxes only on their real estate, their personal property is taxed indirectly by taxing the shares of stock. The reason for that system of taxation is that national banks usually have a large part of their capital invested in Government bonds which are not subject to taxation, but an act of Congress authorizes the State to tax the stock of the bank according to its real value, which includes in its estimate the non-taxable bonds, and the General Assembly, to avail itself of that act, put state banks and insurance companies on a plain with national banks. [State ex rel. v. Shryack, 179 Mo. 424.] The peculiar character of steamboats, here to-day and beyond reach to-morrow, is the reason for requiring the resident owner of such stock to include it in his list to be returned to the assessor, and the peculiar nature of interests in building association also furnishes a good reason for making an exception as to such stock.

The reason for making exceptions of banks, insurance companies, steamboat companies and building association is the difficulty in reaching the tangible

property in those concerns; the stock is treated as representing the property and taxed in lieu of taxing the property. The property of all other corporations could be reached, and, as double taxation was not in favor, shares of stock in such was not included in the items of property specified for taxation. In none of our statutes, past or present, is there anything to indicate a purpose to tax shares of stock except as they represent property "subject by law to taxation in this State," unless it be in the case of banks and insurance companies that own Government bonds that are not taxable, but even in such case the bonds though not taxable are here and under the protection of our law. The special provision for taxing shares of stock in banks, insurance companies, steamboat companies and building associations, in the light of the evident reasons therefor, and the omission to mention for taxation shares of stock in other corporations, and the provision made for the taxing of their properties show that taxing shares of stock in foreign corporations was never in the mind of the General Assembly. This State has always maintained a high standard of public policy and has never attempted to reach beyond its borders to gather revenue from property not under its protection. The definitions of the terms "property" and "personal property" in section 11519, Revised Statutes 1909, first appeared in the Act of 1872, when there were no specifications of items of property to be taxed, and, although it has been brought down through the revisions of our statutes to the present time, yet it means now no more than it meant when first enacted, and is to be applied to those terms when used generally. Those definitions were not then and are not now intended to inject into the list of specifications, which are designed to cover the whole ground, other specifications not only not contained in the list but in discord with the whole theory of assessment as shown by the statute. The plan of giving the tax-

payer no specifications to guide him in making out his list to be returned to the assessor, which was adopted in 1866, after being tested for ten years or more, was found to be unsatisfactory, at least it is to be so inferred, because in 1877 the General Assembly abandoned that plan and adopted the plan now in use furnishing the taxpayer with a full list of items to guide him in making his return under oath and under penalties, and if we should now construe the law to be that he was not only required to make his return of the items specified on that list, but also to go to section 11519 and figure out if he could, or at his peril if he could not, what else was required to be listed under the broad definition of property and personal property in that section given, we are satisfied we should do violence to the meaning of the statute.

Appellant relies on the case of Ogden v. City of St. Joseph, 90 Mo. 522, but the decision in that case was based on a clause in the charter of cities of the second class which is not in this case. The only authority the city of St. Louis has for levying taxes is section 1, article V, of its charter, wherein authority is given to "annually levy and collect taxes on all subjects and objects of taxation, and all property within the city made taxable by law for state purposes."

We do not pass judgment on the proposition stated in the briefs of respondent that an act of the General Assembly essaying to tax shares of stock in foreign corporations would be unconstitutional, because the General Assembly has not enacted such a statute.

We hold that there is nothing in our statutes intended to render subject to taxation shares of stock held by a resident of this State in a foreign corporation whose property is not in this State. That is the view of the law taken by the learned trial judge in this case. The judgment is affirmed.

*Lamm, Woodson, Graves, Ferriss* and *Brown, JJ.*, concur; *Kennish, J.*, concurs in result.